**Ernesto SANTANA**

v.

**UNITED STATES of America,**

**Ernesto Santana, Appellant.**

**No. 96–5276.**

United States Court of Appeals,
Third Circuit.

Submitted by the Clerk for a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(1) Aug. 15, 1996.

Decided Oct. 18, 1996.

As Amended Nov. 14, 1996.

Ernesto Santana, Ray Brook, NY, Appellant Pro Se.

Kevin McNulty, U.S. Attorney's Office, Newark, NJ, for Appellee.

Before: BECKER, ALITO and McKEE, Circuit Judges.

## OPINION OF THE COURT

BECKER, Circuit Judge.

Ernesto Santana has asked this Court to grant a certificate of appealability for his challenge to the district court's denial of habeas corpus relief pursuant to 28 U.S.C. § 2255. As a preliminary matter, Santana's request requires us to determine whether the filing fee payment requirements of the Prison Litigation Reform Act of 1995 apply to *in forma pauperis* habeas corpus petitions and

1. Section 2255 is titled "Federal custody; remedies on motion attacking sentence." Although the historical notes following the section state that the statute "provides an expeditious remedy for correcting erroneous sentences without resort

appeals. We conclude that they do not. Reaching the merits of the request, we find that Santana's petition is wholly without merit, hence the request for a certificate of appealability will be denied.

### I.

Santana pled guilty in 1992 to one count of conspiracy to possess with intent to distribute more than five kilograms of cocaine in violation of 21 U.S.C. §§ 841 & 846. The district court sentenced him to prison for the statutory minimum period of 120 months. In the present habeas petition filed pursuant to 28 U.S.C. § 2255,[1] Santana claims that his counsel rendered constitutionally ineffective assistance by failing to object to an alleged miscalculation of a Sentencing Guideline range and by failing to correct the district court's alleged misconception of its ability to reduce his Guideline level. Santana asserts that but for counsel's errors his minimum sentence could have been as low as 87 months.

By Order entered April 12, 1996, the district court denied the request for a writ of habeas corpus. The district court concluded that, because the statutory minimum sentence associated with Santana's offense exceeded the Sentencing Guideline range asserted by Santana, the request for habeas relief lacked merit. Santana filed a timely notice of appeal, which, in light of the recent amendments to habeas corpus law, was construed as a request for a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(B).

### II.

#### A.

Before examining the merits of Santana's request, we consider whether, in light of the Prison Litigation Reform Act ("PLRA"), Santana must pay the appellate docketing and filing fees of $105.00. On April 26, 1996, Congress enacted the PLRA as Title VIII of the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub.L. 104–134, 110 Stat. 1321 (1996). Section 804 of the

to habeas corpus," petitions filed pursuant to 28 U.S.C. § 2254 or § 2255 are commonly referred to as habeas petitions. Therefore, we will also use this terminology.

PLRA, which amends 28 U.S.C. § 1915, redefines the rights and obligations of litigants who are granted *in forma pauperis* status. Prior to the passage of the PLRA, imprisoned litigants who were granted leave to proceed *in forma pauperis* could seek and easily obtain waivers of filing fees. The PLRA, however, requires prisoners proceeding *in forma pauperis* who bring "civil actions" or appeals of "civil actions" to pay all filing fees. The PLRA also establishes an elaborate deferred payment schedule by which litigants may fulfill their filing fee obligations. If an imprisoned litigant's funds are insufficient to pay the full filing fee, the prisoner must pay an initial partial filing fee. Thereafter, the prisoner must make monthly payments to the court until the filing fee is paid in full.[2]

In the present case, the district court granted Santana's motion to proceed *in forma pauperis* on appeal. Thus, if the PLRA is applicable to a habeas corpus action such as Santana's, then he must somehow pay filing and docketing fees of $105 in order to obtain judicial review of his petition for relief.

### B.

The PLRA applies to prisoners who bring a "civil action" or who appeal a judgment in a "civil action or proceeding." 28 U.S.C. § 1915(a)(2), (b). But the PLRA neither defines "civil action" for purposes of *in forma pauperis* litigants nor expressly excludes habeas corpus proceedings from its scope.

At first blush, the plain meaning of the PLRA appears to require petitioners for habeas relief to fulfill its filing fee obligations. Habeas corpus proceedings are technically civil actions. *Ex parte Tom Tong,* 108 U.S. 556, 559, 2 S.Ct. 871, 872, 27 L.Ed. 826 (1883). Not only do habeas petitions fit within the literal scope of the PLRA, but § 802(a) of the PLRA, which applies to "civil action[s] with respect to prison conditions," explicitly excludes habeas corpus proceedings from its scope. 18 U.S.C. § 3626. As a result, one could argue that, because Congress excluded habeas corpus petitions in one provision, it would have done so in the filing fee provision if it had intended. *See, e.g., Van Doren v. Mazurkiewicz,* 935 F.Supp. 604, 605–06 (E.D.Pa.1996) (holding that the PLRA applies to habeas corpus proceedings); *see also Green v. Nottingham,* 90 F.3d 415, 418 (10th Cir.1996) (holding that "petitions for a writ of mandamus are included within the meaning of the term 'civil action'" for purposes of the PLRA).

We do not believe, however, that the meaning of the phrase "civil action" as used in the PLRA is plain. First, habeas corpus cases are, in effect, hybrid actions whose nature is not adequately captured by the phrase "civil action"; they are independent civil dispositions of completed criminal proceedings. James S. Liebman, 1 FEDERAL HABEAS CORPUS PRACTICE & PROCEDURE § 2.1, at 3 (1988). The "civil" label is attached to habeas proceedings in order to distinguish them from "criminal" proceedings, which are intended to punish and require various constitutional guarantees. *Boudin v. Thomas,* 732 F.2d 1107, 1112 (2d Cir.1984); *see also Ex parte Tom Tong,* 108 U.S. at 559, 2 S.Ct. at 872 (Habeas corpus review is a civil proceeding because "[p]roceedings to enforce civil rights are civil proceedings and proceedings for the punishment of crimes are criminal proceedings."). In light of their hybrid nature, habeas proceedings are often determined to be outside the reach of the phrase "civil action." *See, e.g., Schlanger v. Seamans,* 401 U.S. 487, 490 n. 4, 91 S.Ct. 995, 998 n. 4, 28 L.Ed.2d 251 (1971) (nationwide service of process under 28

---

**2.** Title 28 U.S.C. § 1915(b) provides:

(b)(1) Notwithstanding subsection (a), if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee. The court shall assess and, when funds exist, collect, as a partial payment of any court fees required by law, an initial partial filing fee of 20 percent of the greater of—

(A) the average monthly deposits to the prisoner's account; or

(B) the average monthly balance in the prisoner's account for the 6–month period immediately preceding the filing of the complaint or notice of appeal.

(2) After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

U.S.C. § 1391(e) applicable in civil proceedings against United States employees and officers is not available in habeas corpus proceedings); *Harris v. Nelson*, 394 U.S. 286, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969) (civil discovery rules do not automatically apply to habeas proceedings); *Ewing v. Rodgers*, 826 F.2d 967 (10th Cir.1987) (a habeas corpus suit is not a "civil action" for purposes of an award of attorneys fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A)); *Boudin*, 732 F.2d 1107 (similar); *Dillard v. Blackburn*, 780 F.2d 509 (5th Cir.1986) ("[H]abeas cases are not automatically subject to the rules governing civil actions."); *see also* Advisory Committee Note to Rule 11 of the Rules Governing § 2254 Cases (Federal Rules of Civil Procedure apply to habeas corpus proceedings only to the extent they are not inconsistent with the habeas rules).

Furthermore, the express exclusion of habeas proceedings found in § 802(a) of the PLRA does not require us to hold that habeas proceedings are "civil actions" for purposes of the PLRA. Section 802, which amends 18 U.S.C. § 3626, limits the power of the federal courts to issue orders of relief from prison conditions by requiring that a "prison release order" be issued by a panel of three judges. A "prison release order," defined as an order "that directs the release from or non admission of prisoners to a prison," § 3626(g)(4), contemplates relief akin to that provided by a writ of habeas corpus. Thus, whereas the phrase "civil action" used in the PLRA's provision regarding filing fees does not clearly encompass habeas proceedings, the text of § 802 does. As a result, in order to distinguish between prison release orders and habeas proceedings, Congress felt compelled to exclude expressly such proceedings from the scope of § 802.

Finally, the plain meaning interpretation of the PLRA is undermined by Congress's passage of the antiterrorism law proximate to its enactment of the PLRA. On April 24, 1996, two days before it passed the PLRA, Congress passed the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Aimed at curbing groundless litigation, the AEDPA imposes significant restrictions on the filing of second or successive petitions for habeas corpus relief. If Congress had wanted to reform the *in forma pauperis* status of habeas petitioners, it might have done so in the AEDPA; yet nothing in the AEDPA changes the filing fees attached to habeas petitions or a prisoner's obligation to pay those filing fees.

■ Because of the foregoing reasons, we believe that the phrase "civil action" as used in § 1915(b) lacks a plain meaning. We must therefore consider whether the phrase includes habeas corpus proceedings in this context. The two courts that have previously considered this issue agree that Congress did not intend to include habeas proceedings in the category of "civil action" for the purposes of § 1915(b). *See Martin v. United States*, 96 F.3d 853 (7th Cir.1996); *Reyes v. Keane*, 90 F.3d 676 (2d Cir.1996). We concur with those Courts. In determining whether a statute governing "civil actions" applies to habeas corpus proceedings, we must examine its context. *See In re Grand Jury Subpoena Duces Tecum Dated January 2, 1985 (Simels)*, 775 F.2d 499, 503 (2d Cir.1985) ("The application of each statute or rule using the words 'civil action' must be decided on the basis of its language, its history and its purpose."). In *Reyes*, 90 F.3d at 678, Judge Newman noted that nothing in the text or legislative history of the PLRA "indicate[s] that Congress has endeavored to make the filing fee payment requirements to apply to habeas corpus petitions [or appeals]." Rather, Congress enacted the PLRA primarily to curtail claims brought by prisoners under 42 U.S.C. § 1983 and the Federal Torts Claims Act, most of which concern prison conditions and many of which are routinely dismissed as legally frivolous. *See* H.R.CONF.REP. NO. 104–378, 104th Cong., 2d Sess. (1996) (The PLRA "limit[s] the remedies for prison condition lawsuits."); 141 CONG. REC. S14418 (daily ed. Sept. 27, 1995) (statement of Sen. Hatch) (The PLRA will limit frivolous "prison condition lawsuits," such as a prisoner who "sued demanding that he be issued Reebok ... instead of Converse brand shoes.").

The text of the PLRA itself reflects this focus. Section 802 of the PLRA limits remedies in prison conditions cases. Section 803 restricts § 1983 actions by requiring prisoners to exhaust their administrative remedies prior to filing such claims. *See* 42 U.S.C. § 1997(e). Section 806 narrows the availabil-

ity of relief under the Federal Tort Claims Act by prohibiting prisoners from bringing actions against the government for mental or emotional injury absent a showing of physical harm. *See* 28 U.S.C. § 1346(b). Relying upon the PLRA's purpose, the Second Circuit has noted that the PLRA applies to special proceedings like habeas corpus "if the . . . claim is analogous to the typical suits brought under 42 U.S.C. § 1983 complaining about prison conditions." *Reyes,* 90 F.3d at 678 (*quoting In re Paul Nagy,* 89 F.3d 115, 117 (2nd Cir.1996)). Although we do not suggest that the only civil actions to which the PLRA applies are prisoners' suits seeking relief from prison conditions, we agree with the Second Circuit that, where a claim is not analogous to such a suit, the PLRA should be applied with caution. *See Reyes,* 90 F.3d at 678 n. 1.

Furthermore, when the PLRA is read as a whole, it is apparent that Congress did not intend for the statute to apply to habeas proceedings. The PLRA establishes an elaborate installment payment plan by which litigants may fulfill their filing fee obligations, yet does not increase the $5 filing fee for a habeas corpus petition. In comparison, the filing fee for a civil complaint is $120.00. 28 U.S.C. § 1914(a). Congress surely did not intend for the installment plan of the PLRA to apply to habeas corpus actions merely to assure deferred monthly payments of a $5.00 fee. *See Reyes,* 90 F.3d at 678. Furthermore, § 1915(g) limits a prisoner to three frivolous suits or appeals in a lifetime. To hold that the PLRA was applicable to habeas corpus actions would prohibit a prisoner who had filed three groundless civil suits from seeking habeas relief from unlawful imprisonment. As Judge Posner observes in *Martin,* 96 F.3d at 855–56 "[t]his result would be contrary to a long tradition of ready access of prisoners to federal habeas corpus." This is a result that we cannot countenance.

For the foregoing reasons, we conclude that the filing fee payment requirements of the PLRA set forth in 28 U.S.C. § 1915(b) do not apply to habeas corpus petitions or to appeals from the denial of such petitions.

Henceforth, the Clerk of this Court and the clerks of all of the district courts in this Circuit shall not impose the financial requirements of the PLRA *in forma pauperis* habeas corpus cases or appeals brought under 28 U.S.C. §§ 2254 and 2255.

## III.

■ Turning to the substance of the request for a certificate of appealability, we find no basis for granting it. In his plea for habeas relief, Santana reproaches his counsel for failure to object to a miscalculation of his sentence, asserting that the Sentencing Guideline range for his offense requires a minimum sentence of only 87 months. The crime to which Santana pled guilty, however, carries a mandatory statutory minimum sentence of 120 months. 21 U.S.C. §§ 846, 841(b)(1)(A). In a case such as this, where the statutory minimum sentence exceeds the defendant's guideline range, the court is required to impose the statutory minimum sentence. U.S.S.G. § 5G1.1(c)(2); *see also United States v. Melendez,* 55 F.3d 130, 135 n. 1 (3d Cir.1995) ("Where a statutory minimum is above the Guideline range, it becomes the guideline sentence.") (internal quotation marks omitted), *aff'd,* —— U.S. ——, 116 S.Ct. 2057, 135 L.Ed.2d 427 (1996).

■ We recognize that a statutory minimum sentence is not an absolute barrier to a lesser sentence:

Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense.

18 U.S.C. § 3553(e). In Santana's case, however, the barrier remains inviolable. A court is powerless to impose a sentence below a statutory minimum without a motion of the government; in this case, the prosecution made no such motion. *See Melendez,* 55 F.3d at 134 ("Congress has authorized sentences below a statutory minimum only upon the prosecution's motion.").[3] Moreover, by

---

3. We note that 18 U.S.C. § 3553 was amended to add a "safety valve" provision that now allows a district court to impose a guideline sentence below the mandatory minimum if the defendant meets certain criteria. The safety valve exception, 18 U.S.C. § 3553(f), was enacted as part of

his own admission, the only assistance that Santana provided the government related to his own involvement in the conspiracy, Memorandum of Law in Support of Petition at 6–7, not that of "another person who has committed an offense." 28 U.S.C. § 3553(e). Thus, Santana cannot fault his counsel for failure to press the government to make such a motion. And because the court was powerless to impose a sentence below the statutory minimum, Santana cannot show that his attorney's performance was objectively unreasonable as required by a claim for ineffective assistance of counsel. *Strickland v. Washington,* 466 U.S. 668, 687–88, 104 S.Ct. 2052, 2064–65, 80 L.Ed.2d 674 (1984).

 The Antiterrorism and Effective Death Penalty Act requires that a certificate of appealability be granted before an appeal of the denial of a § 2255 petition may proceed. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue only if "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Supreme Court in *Barefoot v. Estelle,* 463 U.S. 880, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983), stated that under an unamended § 2253 a certificate of probable cause should issue in a § 2254 case only if the applicant had made a "substantial showing of the denial of a *federal* right." *Id.* at 893 n.4. It is undecided whether Congress intended to change the standard, along with the name, for granting a certificate of appealability. We note that in another part of the AEDPA regarding granting stays of execution, the drafters used "substantial showing of the denial of a *federal* right." § 2262(b)(3). We further note that a writ of habeas corpus can be granted if a person is held in violation of the Constitution (i.e. constitutional rights) or laws of the United States (i.e. federal rights). 28 U.S.C. §§ 2241, 2254, 2255. We need not determine whether the language of § 2253(c)(1) resulted from imperfect draftsmanship or from an intent to change the standard for granting a certificate of appealability because Santana's petition raises a constitutional claim, that of ineffective assistance of counsel. Since Santana has not made a substantial showing of

the denial of a constitutional right, we deny the request for a certificate of appealability.

## IV.

For the foregoing reasons, we hold that the filing fee payment requirements of the PLRA set forth in 28 U.S.C. § 1915(b) do not apply to habeas corpus petitions or to appeals from the denial of such petitions. Because we also find that Santana's claim of ineffective counsel is without merit, his request for a certificate of appealability will be denied.

---

the Violent Crime Control and Law Enforcement Act of 1994, Pub.L. 103–322, 108 Stat. 1796. This section provides no relief for petitioner, who pled guilty in 1992, as it applies only to sentences imposed on or after September 23, 1994 and is not retroactive. *United States v. Torres,* 1996 WL 626446 (10th Cir. Oct. 30, 1996) (citing *United States v. Rodriguez–Lopez,* 63 F.3d 892, 893 (9th Cir.1995) and *United States v. Lopez–Pineda,* 55 F.3d 693, 697 n.3 (1st Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 259, 133 L.Ed.2d 183 (1995)).