**Bruce Douglas ANDERSON,
Petitioner–Appellant,**

v.

**Harry K. SINGLETARY, Jr., Robert A. Butterworth, Attorney General of the State of Florida, Respondents–Appellees.**

No. 96–2697.

United States Court of Appeals,
Eleventh Circuit.

April 18, 1997.

James H. Burke, Jr. and William M. Kent, Asst. Federal Public Defenders, Jacksonville, FL, for Petitioner–Appellant.

Robert Butterworth, Atty. Gen. Miami, FL and Belle B. Turner, Asst. Atty. Gen, Daytona Beach, FL, for Respondents–Appellees.

David S. Kris, Atty., Dept of Justice, Washington, DC, for Dept. of Justice.

Before HATCHETT, Chief Judge, ANDERSON, Circuit Judge, and LAY *, Senior Circuit Judge.

HATCHETT, Chief Judge:

In this order, we hold that the filing fee requirements of the Prison Litigation Reform Act of 1995 (PLRA), Title VIII of the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub.L. No. 104–134, 110 Stat. 1321 (Apr. 26, 1996), do not apply to habeas corpus proceedings.

## I. BACKGROUND

In August 1992, movant Bruce Anderson filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Middle District of Florida, challenging three 1987 state convictions. In May 1996, the district court denied Anderson's petition. Thereafter, Anderson filed in the district court a notice of appeal and a concurrent application for a certificate of probable cause. On June 14, 1996, the district court denied Anderson's application. Subsequently, Anderson moved this court for a certificate of appealability. On August 14, 1996, the clerk of this court informed Anderson that in order to proceed he had to pay the $105 appellate docketing and filing fee, or move, in accordance with the terms of the PLRA, for relief from the obligation to pay that entire fee in advance. In response, Anderson filed a Motion to Determine Applicability of Docket and Filing Fees, in which he contended that "[h]abeas corpus cases are not covered by" the PLRA and, therefore, this court should find the "docket and filing fees inapplicable to him." We requested briefing and granted oral argument on the following issue: "Whether the fee provisions of 28 U.S.C. § 1915, as amended by the [PLRA], apply to habeas corpus cases." [1]

* Honorable Donald P. Lay, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

**1.** We also asked the parties to brief, assuming the foregoing issue was answered in the affirmative, whether payment of the docketing and filing fee was required where, as here, counsel had been appointed under the Criminal Justice Act, 18 U.S.C. § 3006A. Because we answer the first issue in the negative, we do not reach the second.

We note, however, that the PLRA applies to both appellate docketing and filing fees. *Leonard v. Lacy*, 88 F.3d 181, 186 (2d Cir.1996).

## II. DISCUSSION

Section 804(a) of the PLRA recast the procedures prisoners must follow when seeking to proceed *in forma pauperis* in civil actions. Title 28 U.S.C. § 1915(a)(2) now reads:

A prisoner seeking to bring a civil action or appeal a judgment in a civil action or proceeding without prepayment of fees or security therefor, in addition to filing the affidavit filed under paragraph (1), shall submit a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6–month period immediately preceding the filing of the complaint or notice of appeal, obtained from the appropriate official of each prison at which the prisoner is or was confined.

28 U.S.C.A. § 1915(a)(2) (West Supp.1997). Further, section 1915(b) now provides:

(b)(1) Notwithstanding subsection (a), if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee. The court shall assess and, when funds exist, collect, as a partial payment of any court fees required by law, an initial partial filing fee of 20 percent of the greater of—

(A) the average monthly deposits to the prisoner's account; or

(B) the average monthly balance in the prisoner's account for the 6–month period immediately preceding the filing of the complaint or notice of appeal.

(2) After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

(3) In no event shall the filing fee collected exceed the amount of fees permitted by statute for the commencement of a civil action or an appeal of a civil action or criminal judgment.

(4) In no event shall a prisoner be prohibited from bringing a civil action or appealing a civil or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee.

28 U.S.C.A. § 1915(b) (West Supp.1997). Thus, the filing fee provisions of the PLRA apply to prisoners who bring a "civil action" or appeal a judgment in a "civil action or proceeding." 28 U.S.C.A. § 1915(a)(2), (b)(1). We must ascertain whether, as used in the PLRA, these terms are meant to include habeas corpus proceedings. The six circuits that have explicitly addressed this issue thus far have answered the inquiry in the negative. *See United States v. Simmonds*, 111 F.3d 737, 741 (10th Cir.1997) (sections 2254 and 2255 proceedings are not "civil actions" for purposes of 28 U.S.C. § 1915); *Naddi v. Hill*, 106 F.3d 275, 277 (9th Cir.1997) ("[T]he forma pauperis provisions of the PLRA relating to prisoner civil actions and appeals do not apply to habeas corpus proceedings."); *United States v. Cole*, 101 F.3d 1076, 1077 (5th Cir.1996) ("We hold the Act is inapplicable to § 2255 petitions."); *Santana v. United States*, 98 F.3d 752, 754–56 (3d Cir.1996) (PLRA's filing fee payment requirements do not apply to habeas corpus cases or appeals brought under sections 2254 and 2255); *Martin v. United States*, 96 F.3d 853, 855–56 (7th Cir.1996) (PLRA does not apply to sections 2254 and 2255 proceedings); *Reyes v. Keane*, 90 F.3d 676, 678 (2d Cir. 1996) ("[W]e conclude that Congress did not intend the PLRA to apply to petitions for a writ of habeas corpus.").

■ "In determining the meaning of the statute, we look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy." *Crandon v. United States*, 494 U.S. 152, 158, 110 S.Ct. 997, 1001, 108 L.Ed.2d 132 (1990). Unfortunately for our purposes, Congress did not define the term "civil action" in the PLRA. Of course, a multitude of case law exists supporting the proposition that habeas corpus proceedings are "civil" in nature. *See, e.g., Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S.Ct. 2113, 2119, 95 L.Ed.2d 724 (1987) ("Our decisions have con-

sistently recognized that habeas corpus proceedings are civil in nature."); *Browder v. Director, Dep't of Corrections of Ill.*, 434 U.S. 257, 269, 98 S.Ct. 556, 563, 54 L.Ed.2d 521 (1978) ("It is well settled that habeas corpus is a civil proceeding."); *Dickson v. Wainwright*, 683 F.2d 348, 352 (11th Cir.1982) ("Habeas corpus is a civil proceeding . . . ."). Applying the fundamental canon of statutory construction that directs us to interpret words according to their plain and ordinary meaning, see, for example, *Perrin v. United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979), we see some force to the argument that the PLRA applies to habeas corpus cases. *See Santana*, 98 F.3d at 754 ("At first blush, the plain meaning of the PLRA appears to require petitioners for habeas relief to fulfill its filing fee obligations."); *Martin*, 96 F.3d at 855 ("Both [sections 2254 and 2255] are technically civil proceedings and so come within the literal scope of the Act."). However, the language outlined above describing habeas corpus actions as "civil" is, for purposes of our inquiry, somewhat illusive, as habeas corpus actions are not purely (and thus not plainly) "civil actions."

> [H]abeas corpus cases are, in effect, hybrid actions whose nature is not adequately captured by the phrase "civil action"; they are independent civil dispositions of completed criminal proceedings. The "civil" label is attached to habeas proceedings in order to distinguish them from "criminal" proceedings, which are intended to punish and require various constitutional guarantees.

*Santana*, 98 F.3d at 754 (citation omitted); *see also Harris v. Nelson*, 394 U.S. 286, 293–94, 89 S.Ct. 1082, 1087, 22 L.Ed.2d 281 (1969) ("It is, of course, true that habeas corpus proceedings are characterized as 'civil.' But the label is gross and inexact. Essentially, the proceeding is unique.") (citation and footnote omitted); *Simmonds*, 111 F.3d at 743 ("the nature of habeas and § 2255 actions is imprecise and contextually dependent"); *Cole*, 101 F.3d at 1077; *Martin*, 96 F.3d at 855 ("[H]abeas corpus is more accurately regarded as being sui generis (it has its own procedural rules, for example, and when invoked by a prisoner almost its sole office is to

upend a criminal judgment) than as being either civil or criminal . . . ."); 1 James S. Liebman & Randy Hertz, Federal Habeas Corpus Practice and Procedure § 2.2, at 6 (2d ed.1994).

The Supreme Court's recent decision in *O'Neal v. McAninch*, 513 U.S. 432, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995), is illustrative on this point. In *O'Neal*, the Court held that "[w]hen a federal judge in a habeas proceeding is in grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict,' that error is not harmless. And, the petitioner must win." 513 U.S. at ——, 115 S.Ct. at 994. In so doing, the Court rejected the contention that the civil standard for judging harmlessness applies in habeas corpus proceedings:

> We also have examined the precedent upon which the State relies to support its view that appellants bear a "burden" of showing "prejudice" in civil cases. The State contends that, because a habeas proceeding, technically speaking, is a civil proceeding, see, *e.g., Browder v. Director, Dept. of Corrections of Ill.*, 434 U.S. 257, 269, 98 S.Ct. 556, 563, 54 L.Ed.2d 521 (1978), this standard applies here.
>
> One problem with this argument lies in its failure to take into account the stakes involved in a habeas proceeding. Unlike the civil cases cited by the State, the errors being considered by a habeas court occurred in a *criminal* proceeding, and therefore, although habeas is a civil proceeding, someone's custody, rather than mere civil liability, is at stake. And, as we have explained, when reviewing errors from a criminal proceeding, this Court has consistently held that, if the harmlessness of the error is in grave doubt, relief must be granted. We hold the same here.

*O'Neal*, 513 U.S. at ——, 115 S.Ct. at 996 (some citations omitted); *see also Santana*, 98 F.3d at 754–55 (collecting authorities in support of the proposition that "[i]n light of their hybrid nature, habeas proceedings are often determined to be outside the reach of the phrase 'civil action'"); 1 Liebman & Hertz, Federal Habeas Corpus Practice and Procedure § 2.2, at 6–7 n. 4 (2d ed. 1994 &

Supp.1996). In short, we conclude that the language of section 804(a) of the PLRA does not plainly apply to habeas corpus proceedings.

The language put forth at section 804(d) of the PLRA bolsters this conclusion. That section provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated ..., brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C.A. § 1915(g) (West Supp.1997). If the PLRA applies to habeas corpus proceedings, section 804(d) would prevent prisoners who had filed three groundless civil lawsuits in federal court from access to the writ. As the Seventh Circuit observed, "[t]his result would be contrary to a long tradition of ready access of prisoners to federal habeas corpus, as distinct from their access to tort remedies...." *Martin*, 96 F.3d at 855–56; *see also Simmonds*, 111 F.3d at 743; *Naddi*, 106 F.3d at 277; *Cole*, 101 F.3d at 1077; *Santana*, 98 F.3d at 756.

■ Our review of the entire statute confirms our belief that the PLRA was not intended to apply in habeas corpus. Section 802 of the PLRA addresses procedures and remedies with respect to prison conditions challenges, see 18 U.S.C.A. § 3626 (West Supp.1997); section 803, among other things, requires prisoners to exhaust their administrative remedies before bringing such challenges and grants courts greater leeway in dismissing those claims, see 42 U.S.C.A. § 1997e (West Supp.1997); section 805 gives courts greater liberty in dismissing prisoner lawsuits asserted against governmental entities or employees, see 28 U.S.C.A. § 1915A (West Supp.1997); section 806 restricts the availability of relief for prisoners under the Federal Tort Claims Act, see 28 U.S.C.A.

§ 1346(b)(2) (West Supp.1997); section 807 provides that any compensatory damages a prisoner receives in connection with a civil action shall be paid directly to satisfy any outstanding restitution orders; section 808 provides that reasonable efforts shall be made to notify a prisoner's victims prior to payment of any compensatory damages to that prisoner; and section 809, among other things, allows for the revocation of earned good time credit for a prisoner's filing of malicious, harassing or false claims, see 28 U.S.C.A. § 1932 (West Supp.1997).[2] In sum, it is clear to us that Congress promulgated the PLRA to curtail prisoner tort, civil rights and conditions litigation, not the filing of habeas corpus petitions. *See Simmonds*, 111 F.3d at 743 ("The main purpose of the Prison Litigation Reform Act was to curtail abusive prison-condition litigation."); *Naddi*, 106 F.3d at 277 ("A review of the language and intent of the PLRA reveals that Congress was focused on prisoner civil rights and conditions cases, and did not intend to include habeas proceedings in the scope of the Act...."); *Santana*, 98 F.3d at 755 ("Congress enacted the PLRA primarily to curtail claims brought by prisoners under 42 U.S.C. § 1983 and the Federal Tort Claims Act, most of which concern prison conditions and many of which are routinely dismissed as legally frivolous.... The text of the PLRA itself reflects this focus."); *Reyes*, 90 F.3d at 678 ("There is nothing in the text of the PLRA or its legislative history to indicate that Congress expected its filing fee payment requirements to apply to habeas corpus petitions.").

The fact that Congress expressly excluded "habeas corpus proceedings" in defining the term "civil action with respect to prison conditions" in section 802(a), see 18 U.S.C.A. § 3626(g)(2) (West Supp.1997), does not give us much pause. As Judge Becker explained:

> Section 802 ... limits the power of the federal courts to issue orders of relief from prison conditions by requiring that a "prison release order" be issued by a panel of three judges. A "prison release order,"

---

2. In all, the PLRA contains ten sections, 801–810. Section 801 sets out the PLRA's "short title"; section 810 is a severability provision.

defined as an order "that directs the release from or non admission of prisoners to a prison," § 3626(g)(4), contemplates relief akin to that provided by a writ of habeas corpus. Thus, whereas the phrase "civil action" used in the PLRA's provision regarding filing fees does not clearly encompass habeas proceedings, the text of § 802 does. As a result, in order to distinguish between prison release orders and habeas proceedings, Congress felt compelled to exclude expressly such proceedings from the scope of § 802.

*Santana,* 98 F.3d at 755.

We make two final points. First, the temporal proximity of the enactment of the PLRA on April 26, 1996, and the passage of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104–132, 110 Stat. 1214 (Apr. 24, 1996), serves to undercut the position that the PLRA applies to habeas corpus proceedings.

> Aimed at curbing groundless litigation, the AEDPA imposes significant restrictions on the filing of second or successive petitions for habeas corpus relief. If Congress had wanted to reform the *in forma pauperis* status of habeas petitioners, it might have done so in the AEDPA; yet nothing in the AEDPA changes the filing fees attached to habeas petitions or a prisoner's obligation to pay those filing fees.

*Santana,* 98 F.3d at 755; *see also Simmonds,* 111 F.3d at 741; *Naddi,* 106 F.3d at 277; *Cole,* 101 F.3d at 1077; *Martin,* 96 F.3d at 855; *Reyes,* 90 F.3d at 678 ("Congress gave specific attention to perceived abuses in the filing of habeas corpus petitions by enacting Title I of the AEDPA. That title imposes several new restrictions on habeas corpus petitions, but makes no change in filings fees or in a prisoner's obligation for payment of existing fees."). Lastly, we note that while the district court filing fee for a civil action is $150, the filing fee for a section 2254 petition is $5, and, for a section 2255 proceeding, no filing fee is required. *See* 28 U.S.C.A. § 1914 (West Supp.1997); Rule 3, Rules Governing Section 2255 Proceedings for the United States District Courts, advisory committee notes. "It is not likely that Congress would have wished the elaborate procedures

of the PLRA to apply to a habeas corpus petition just to assure the partial, monthly payments of a $5 filing fee." *Reyes,* 90 F.3d at 678; *see also Santana,* 98 F.3d at 756.

### III. CONCLUSION

For the foregoing reasons, we hold that the filing fee provisions of section 804(a) of the PLRA do not apply in 28 U.S.C. § 2254 or 28 U.S.C. § 2255 proceedings.

SO ORDERED.