696 A.2d 739

DON FISHER, APPELLANT, v. NEW JERSEY
STATE PAROLE BOARD, RESPONDENT.

ERIC GIBBONS, APPELLANT, v. SCOTT
FAUNCE, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued June 11, 1997—Decided July 10, 1997.

Before Judges KING, KEEFE and CONLEY.

*James E. Ryan* argued the cause for appellants Fisher and Gibbons (*Crummy, Del Deo, Dolan, Griffinger & Vecchione,* attorneys; *Lawrence S. Lustberg* and *Mr. Ryan,* on the brief).

*Diane M. Moratti,* Deputy Attorney General, argued the cause for respondents New Jersey State Parole Board and Faunce (*Peter Verniero,* Attorney General of New Jersey, attorney; *Joseph L. Yannotti,* Assistant Attorney General, of counsel; *Ms. Moratti* and *Jennifer Kleppe,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

KING, P.J.A.D.

## I.

These two matters are before us on summary remands from the Supreme Court for accelerated reconsideration. The issue is whether *N.J.S.A.* 30:4–16.2 to –16.5; *L.* 1996, *c.* 11, requires that inmates pay a portion of the appellate filing fee, now $175, when filing an appeal to this court from denial of parole, or from a jail or prison disciplinary sanction. Invariably this court, on motion, grants indigency status to prison inmates in these matters. *See R.* 2:7–1.

We conclude that the statute does not include inmate appeals from adverse agency determinations in parole and disciplinary matters. Rather, we find from our examination of the text of the statute that the Legislature intended to deter frivolous civil lawsuits for money damages and injunctive relief filed by inmates against governmental entities and their agents by imposing the requirement of paying filing fees.

## II.

### FISHER

On October 6, 1995 appellant Don Fisher was convicted and sentenced to a five-year term, with an 18–month period of parole ineligibility, for endangering the welfare of a child. After a parole hearing on August 15, 1996, the Parole Board on August 22, 1996 denied Fisher's parole application. The Board set a "twenty

month future eligibility term." On October 15 the Board denied his request for reconsideration. On November 8 he filed this notice of appeal with an affidavit of indigency which said he had $49.50 in his inmate account and earned $50 a month in his prison job. The record shows he has an average daily balance in his inmate account of $4.27. On January 9, 1997 we summarily granted Fisher's motion to proceed as an indigent but denied his motion for assignment of counsel. We declined to apply *N.J.S.A.* 30:4–16.3 to the proceeding.

### GIBBONS

On September 12, 1996 inmate Gibbons received an on-the-spot sanction by Corrections Officer Mitchell for yelling and kicking his cell door. The sanction was four hours extra work. The next day Gibbons received a disciplinary charge for threatening Mitchell with bodily harm, a violation of *N.J.A.C.* 10A:4–4.1(a) *005. After a disciplinary hearing on September 30, 1996, Hearing Officer Ireland concluded there was substantial evidence to support the charge. Ireland imposed a sanction of fifteen days detention, 180 days administrative segregation, and 180 days loss of commutation time. Gibbons filed an administrative appeal and on October 7 Administrator Faunce upheld the decision of the hearing officer. On October 24, 1996 Gibbons filed an appeal to this court with a certification of indigency stating that he had $41.26 in his inmate account and earned $25 per month at his prison job. The record suggests that his average daily balance in his inmate account was $51.34. On January 9, 1997 we summarily granted Gibbons' motion to proceed as an indigent. We declined to apply *N.J.S.A.* 30:4–16.3 to the proceeding.

By order of March 4, 1997 the Supreme Court granted the Parole Board's and Administrator Faunce's motions for leave to appeal in both cases and summarily remanded the matters to this court for accelerated and plenary consideration on the merits. We have consolidated the matters for purposes of opinion.

## III.

The pertinent section of the statute, *N.J.S.A.* 30:4–16.3, provides:

a.  If an inmate files an action or proceeding in any court of this State and requests a waiver of filing fees on the grounds of indigency the inmate shall attach to the filing a certified copy of the prisoner's fund account statement from the appropriate correctional institution for the six months immediately preceding the filing of the complaint or petition.  If any filing fee is waived, the inmate shall pay a partial filing fee that is 20% of the greater of:

(1) the average monthly balance in the inmate's account;

(2) the average deposits to the inmate's account;

for the six months immediately preceding the filing of the complaint or petition. However, the partial fee may not exceed the full filing fee for the commencement of the action or proceeding.

b.  If an inmate claims exceptional circumstances that render the offender unable to pay the partial filing fee required by this section, in addition to the statement of account required by subsection a. the inmate shall submit an affidavit of special circumstances setting forth the reasons and circumstances that justify relief from the partial filing fee requirement.

c.  If the court approves the application to waive all fees, the court shall give written notice to the inmate that all fees and costs relating to the filing and service will be waived.  If the court denies the application to waive all fees, the court shall give written notice to the inmate that the offender's case will be dismissed if the partial filing fee is not paid within 45 days after the date of the order, or within an additional period that the court may, upon request, allow.  Process in an action filed by an inmate shall not be served until the fee is paid.

*L.* 1997, *c.* 11 "intended to discourage the filing of frivolous civil actions by inmates confined in State and county correctional institutions." *Sponsors' Statement to Assembly Bill* No. 879. "The bill also would establish a procedure requiring an inmate to pay at least a partial fee for filing a civil action." *Ibid.* Similar intentions were expressed throughout the legislative process:

Assembly Bill No. 879 ... is designed to discourage the filing of frivolous civil actions by inmates confined in State and county correctional facilities by permitting the Attorney General or county counsel, as the case may be, to move for recovery of fees and costs in those instances where the Attorney General or county counsel believes the law suit to be frivolous.

[*Assembly Law and Public Safety Committee Statement to Assembly Bill No. 879* (Jan. 29, 1996).]

This bill is intended to discourage the filing of frivolous civil actions by inmates confined in State and county correctional institutions by permitting the Attorney

General or county counsel to move for the recovery of fees and costs in cases in which the Attorney General or county counsel believes the lawsuit to be frivolous. [*Senate Judiciary Committee Statement to Assembly Bill No. 879* (Feb. 15, 1996).]

According to the affidavit of Howard Gottlieb, an administrative analyst with the Department of Corrections, the Department maintains a personal trust account for each inmate. Inmates are permitted to receive funds from their families and other outside sources as well as wages for employment within the prison and work release assignments. These funds are automatically credited each month to the inmates' accounts. Approximately ninety percent of New Jersey inmates receive wages from prison jobs ranging from $1.30 per day for cell sanitation to $5 per day for other types of jobs. Thus, ninety percent of inmates have a minimum of $40 deposited in their accounts each month. Inmates may spend the money in their fund accounts in a variety of ways, including purchasing goods from the inmate commissary and from outside sources such as catalogues, or depositing it into savings accounts outside of prison. Inmate accounts may also be debited for items such as postage, copying costs, copayments and for court-imposed assessments, penalties and fines.

This case presents an issue of statutory construction. Our fundamental duty in construing a statute is to effectuate the intent of the Legislature. *Lesniak v. Budzash*, 133 *N.J.* 1, 8, 626 *A.*2d 1073 (1993). Under the rules of statutory construction, the first step is to examine the text of the statute to determine whether it yields but one interpretation, *Richard's Auto City, Inc. v. Director, Div. of Taxation*, 140 *N.J.* 523, 531, 659 *A.*2d 1360 (1995), keeping in mind that words and phrases in a statute should carry their well-understood meanings absent any explicit indication of a special meaning. *State v. Mortimer*, 135 *N.J.* 517, 532, 641 *A.*2d 257, *cert. denied*, 513 *U.S.* 970, 115 *S.Ct.* 440, 130 *L.Ed.*2d 351 (1994). If the language of the statute is clear and unambiguous, the court need not look beyond its terms to determine the legislative intent. *State v. Sutton*, 132 *N.J.* 471, 479, 625 *A.*2d 1132 (1993). Each side here claims the statute, and specifically

the phrase "action or proceeding in any court of this state," is both clear on its face and supportive of its position.

We do not find the text facially dispositive of the issue. Judicial interpretation is required. The statute is entitled: "An Act concerning civil actions by inmates of correctional facilities." The sponsor's statement and the committee statements do suggest to us an intent to apply the filing fee conditions to original civil actions for money damages, and perhaps much less frequently, injunctive relief, and not an intent to apply these conditions to appeals to this court from administrative agencies, such as the Parole Board and the Department of Corrections, as in these cases before us. These cases, of course, do not yield monetary awards but typically challenge agency action or inaction with respect to inmates' status as arbitrary, capricious or unreasonable in the denial of parole or the imposition of prison discipline. These appeals are actions in lieu of prerogative writs traditionally brought to obtain direct review in this court of the actions of legislatively-created State administrative agencies. *See N.J. Const.*, art. VI, sec. V, para. 4 (1947); *R.* 2:2–3(a)(2); Pressler, *Current N.J. Court Rules,* Comments 2 and 4 on *R.* 2:2–3(a)(2) (1997); *In re LiVolsi,* 85 *N.J.* 576, 593–97, 428 *A.*2d 1268 (1981).

In examining and parsing *L.* 1996, *c.* 11, we see substantial textual evidence which, when understood in the context of the sponsor's and committee statements, the only available legislative background, suggest that the Legislature intended the provisions of Chapter 11 to apply to civil actions for money damages, not to prisoners' appeals challenging parole denials or inmate discipline.

Section 1(a) and (b)[1] (*N.J.S.A.* 30:4–16.2) refers to any "civil action filed by an inmate" and "lawsuits" which if frivolous could

---

[1] Section 1(a) and (b) states:

1.  a. *In any civil action filed by an inmate* in which the defendant is represented by the Attorney General or county counsel and the Attorney General or county counsel believes the lawsuit is frivolous, the Attorney General or county counsel shall move to recover costs and fees.

result in the State's recovery of sanctions—costs, fees and "forfeiture of progressive time credits." Appeals to this court from adverse agency action are usually not thought of as "civil actions" or "lawsuits" but rather as appeals from agency actions. Section 2(a) (*N.J.S.A.* 30:4–16.3(a)) speaks of the "filing of the complaint or petition." Appeals to this court from the Parole Board and the Department of Corrections are brought by filing a notice of appeal with this court within 45 days of the final agency action, *R.* 2:4–1(a); *R.* 2:5–1(a), not by "the filing of a complaint or petition." Such appeals are not traditionally or conceptually considered initiated by "filing a complaint or petition." Section 2(a) also says: "However, the partial fee may not exceed the full filing fee *for the commencement of the action or proceeding*" (emphasis added). The appeal is not the "commencement" of the action but usually the conclusion of the process. Section 2(c) (*N.J.S.A.* 30:4–16.3(c)) states: "If the court approves the application to waive all fees, the court shall give written notice to the inmate that all fees and costs relating *to the filing* and *service will be waived*" (emphasis added). Of course, there is no service fee involved in the notice of appeal process as there is with the service of a summons and complaint by the sheriff in a civil action for damages. *See R.* 4:4–3(a). Section 2(c) also states that: "Process in an action filed by an inmate shall not be served until the fee is paid." Again, no process is "served" in an appeal from agency action.

Further evidence of the mindset of the Legislature is gleaned from section 3 (*N.J.S.A.* 30:4–16.4) which says:

3. If an inmate is awarded a money judgment as the result of a civil action, the monies derived from that judgment shall be deposited in the inmate's account at

b. The commissioner shall promulgate regulations providing for the forfeiture of progressive time credits authorized pursuant to R.S. 30:4–140 when an inmate's *lawsuit:*

(1) was filed to harass or retaliate against another individual, to disrupt or interfere with the operation of the correctional institution, or for some other malicious purpose, and

(2) has been determined by a court to be frivolous.

[*N.J.S.A.* 30:4–16.2 (emphasis supplied).]

the correctional institution in which the inmate is confined. These monies shall be used to satisfy any court-imposed fines, restitution or penalties which the inmate has not met. These monies may also be used to meet any claims for reimbursement for medical treatment sought by the State or a county pursuant to the provisions of P.L.1995, c. 254 (C. 30:7E–1 et seq.).

This section certainly focuses on the concept of potential monetary awards in a "civil action" and does nothing to enhance the State's theory that the Legislature had administrative appeals in mind, proceedings not at all productive of monetary awards.

In an analogous context, the federal Prison Litigation Reform Act of 1995 (PLRA) which does not define the term "civil action," *Santana v. United States,* 98 *F.*3d 752, 754 (3d Cir.1996), has generated litigation as to the scope of the term "civil action." Since its enactment, a line of cases has developed holding that the filing fee requirement does not apply to habeas corpus proceedings or to appeals from denials of such petitions. *Smith v. Angelone,* 111 *F.*3d 1126, 1131 (4th Cir.1997); *Anderson v. Singletary,* 111 *F.*3d 801, 806 (11th Cir.1997); *United States v. Simmonds,* 111 *F.*3d 737, 744 (10th Cir.1997); *Naddi v. Hill,* 106 *F.*3d 275, 277 (9th Cir.1997); *United States v. Cole,* 101 *F.*3d 1076, 1077 (5th Cir.1996); *Santana,* 98 *F.*3d at 756; *Martin v. United States,* 96 *F.*3d 853, 855 (7th Cir.1996); *Reyes v. Keane,* 90 *F.*3d 676, 678 (2d Cir.1996).

Instructive in this regard, the court in *Santana v. U.S.* noted that "[a]t first blush" the PLRA's plain meaning would appear to require petitioners for federal habeas corpus relief to fulfill their filing fee obligations. 98 *F.*3d at 754. However, the court found that the phrase "civil action," as used in the PLRA, lacks a plain meaning, in part due to the fact that the nature of habeas corpus actions is not adequately captured by the phrase. *Id.* at 754–55. The Third Circuit determined that the phrase "civil action" did not include habeas proceedings, primarily for two reasons. One, nothing in the text or legislative history of the PLRA indicates that Congress intended to make the filing fee payment requirements apply to habeas petitions or related appeals. *Id.* at 755. "Rather, Congress enacted the PLRA primarily to curtail claims

brought by prisoners under 42 *U.S.C.* § 1983 and the Federal Tort Claims Act, most of which concern prison conditions and many of which are routinely dismissed as legally frivolous." *Ibid.* Second, the court observed that two days prior to passage of PLRA, Congress passed the Antiterrorism and Effective Death Penalty Act (AEDPA), which was aimed at curbing groundless litigation by restricting the filing of successive petitions for habeas relief but did not change the filing fee requirements with respect to habeas petitions. *Ibid.*

Just as in *Santana,* there is nothing in the applicable legislative background or history with respect to *N.J.S.A.* 30:4–16.3 to indicate that the Legislature intended the statute to apply to inmate appeals from adverse administrative actions. The Attorney General, of course, claims the converse is true, namely, that there is nothing in the legislative history to indicate any intent to exempt inmate appeals, such as the ones involved here, from the provisions of *N.J.S.A.* 30:4–16.3. However, the extant legislative background and the text of the law clearly show that the statute was enacted, as was the PLRA, to "discourage the filing of frivolous civil actions" by requiring inmates to pay a partial fee for "filing a civil action." *Sponsors' Statement, supra.* The nature of these appeals to us from administrative agencies is not "adequately captured," *Santana v. United States,* 98 *F.*3d at 754, by the statutory phrase "if an inmate files an action or proceeding in any court of this State" contained in *N.J.S.A.* 30:4–16.3(a). We conclude that the Legislature most likely did not intend the statute to apply to inmate appeals from adverse administrative determinations of parole status or imposition of inmate discipline. Indeed, prison discipline matters are commenced by the Department of Corrections, certainly not by an inmate filing a civil action. Parole matters implicate an elaborate, entirely separate and much different constellation of concerns than frivolous civil lawsuits. "The Parole Board has broad but not unlimited discretionary powers. The pertinent legislation (*N.J.S.A.* 30:4–123.7 *et seq.*) sets forth guidelines and under our special constitutional structure (*N.J. Const.,* art. VI, sec. 5, para. 4 (1947)) the Board's actions are

always judicially reviewable for arbitrariness." *Monks v. N.J. State Parole Board*, 58 *N.J.* 238, 242, 277 *A.*2d 193 (1971); *In re Hawley*, 98 *N.J.* 108, 112–113, 484 *A.*2d 684 (1984); *see* Marks, *New Jersey Prisoners' Reference Manual*, §§ 3–1 to 3–18 at 63 to 130 (Gann 1993).

We conclude that the filing requirements of *N.J.S.A.* 30:4–16.3 do not apply to inmate appeals from adverse parole and disciplinary determinations. We find that the textual and contextual evidence do not support the State's position.

We confirm the prior orders of this court to that effect.