# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-60706

EDDIE JOSEPH BROWN,

> Plaintiff - Appellant

v.

APRIL MEGG; DR. RON WOODALL; WEXFORD HEALTH,

> Defendants - Appellees

United States Court of Appeals
Fifth Circuit

**FILED**

May 15, 2017

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Southern District of Mississippi

Before STEWART, Chief Judge, and HIGGINBOTHAM and COSTA, Circuit Judges.

GREGG COSTA, Circuit Judge:

Under the Prison Litigation Reform Act (PLRA), a third strike bars a prisoner from proceeding *in forma pauperis* unless "the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). A strike issues when a prisoner's action is dismissed as frivolous, malicious, or for failure to state a claim. *Id.* When the action is dismissed entirely on one of these grounds, the strike inquiry is easy enough. But what of an action that is dismissed partly on section 1915(g) grounds and partly on other grounds? This case poses that question as some of Eddie Brown's allegations were dismissed for failure to state a claim while others were adequately pleaded but failed at

No. 15-60706

summary judgment. We affirm those merits rulings but conclude that a strike does not issue when only some claims are dismissed on section 1915(g) grounds.

I.

Brown suddenly began experiencing severe stomach pain on July 14, 2014. With the help of inmates and prison staff, he submitted a request for medical attention. Brown was taken to the infirmary, operated by Wexford Health, where he was seen within a couple hours by Dr. Ron Woodall.

Brown asserts that Woodall was hostile and dismissive of his complaints, purportedly telling Brown "he was full of shit." But he admits that Woodall ordered an x-ray and blood work, both of which produced normal results. Brown further concedes that Woodall prescribed him zantac and a gastrointestinal cocktail. These medications treat conditions, like ulcers, that may cause a person's stomach to produce too much acid. Brown was discharged from the infirmary the same day.

Brown alleges that over the next two weeks he was incessantly in pain and made various unanswered requests to see doctors. Supporting Brown's account are three affidavits by inmates who purport to have seen Brown in pain and helped him make requests for medical attention. Brown also offers forms requesting treatment dated July 18, 21, 23, and 25. None but the last form, however, are marked received by medical staff.

Defendants deny knowledge of any such requests. Woodall says there is no record of any sick call request between July 14 and July 29 and that he never refused to see or treat Brown. April Meggs, the nurse in charge of staffing for Wexford, states that she never saw Brown as a patient nor was she ever responsible for his health.

2

Brown next visited the infirmary on July 29. Dr. Charmaine McCleave ordered an x-ray, IV fluids, and blood work. Brown's x-ray again indicated no abnormalities. The next day, however, after again examining Brown and reviewing his lab results, McCleave transferred Brown to a hospital. There it was discovered that Brown had a hole in his stomach, caused by an ulcer, which was allowing acids to secrete into his internal tissue. Brown successfully underwent corrective surgery.

Brown was discharged and returned to prison with instructions to take pain medications for up to ten days, as necessary, and to discontinue the use of zantac. Woodall and McCleave gave him pain medications for fifteen days. Brown's medical records reflect that the doctors reduced the potency of Brown's pain medications as his pain subsided. The doctors did not, however, discontinue Brown's zantac prescription.

Brown brought this section 1983 lawsuit against Woodall, Meggs, and Wexford, alleging they were deliberately indifferent to his serious medical condition. In a single order, the magistrate judge rejected all of Brown's claims. The order held that the allegations against Meggs in her supervisory capacity and against Wexford for the acts of its employees failed to state a claim. It also granted summary judgment finding insufficient evidence to support the claims against Woodall and the contention that Meggs was responsible for the delay in his treatment. Because some of Brown's allegations were dismissed for failure to state a claim, the court assessed a section 1915(g) strike.

## II.

We agree that Brown's claims were properly dismissed.

Brown does not contest with much force that his allegations against Meggs and Wexford fail to state a claim. He alleges no more than that Meggs

and Wexford ought to be liable for the acts of their subordinates. But without more, Meggs's supervisory role does not make her so liable. *Thompkins v. Belt*, 828 F.2d 298, 303–04 (5th Cir. 1987). Wexford likewise is not automatically liable for the acts of its employees. *Kohler v. Englade*, 470 F.3d 1104, 1114–15 (5th Cir. 2006) (holding that *respondeat superior* liability does not attach in section 1983 claims). And Brown does not identify any Wexford policy, practice, or custom of ignoring sick call requests. *Howell v. Town of Ball*, 827 F.3d 515, 527 (5th Cir. 2016).

As for his claims dismissed at summary judgment,[1] Brown's proof does not surmount the high threshold of deliberate indifference. That standard requires showing that a prison official knew of, but disregarded, an inmate's serious medical need. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

Brown argues Woodall was deliberately indifferent to his needs in three ways: (1) intentionally misdiagnosing him, (2) interfering with his postsurgery treatment, and (3) refusing to treat him. The first two claims are belied by the record. Woodall saw Brown, ordered x-rays and bloodwork, and, after receiving normal results, prescribed medication to alleviate Brown's symptoms. That Woodall may have made a dismissive comment or gotten the diagnosis wrong does not establish that he "refused to treat [Brown], ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Brown's medical records

---

[1] Brown alleges the district court erred by not apprising him of the summary judgment requirements. Although courts should advise *pro se* prisoners of procedural rules, *Davis v. Fernandez*, 798 F.3d 290, 293–94 (5th Cir. 2015), we have held that they need not be given additional notice of the consequences of a summary judgment motion and the right to submit opposing affidavits as the notice given by Rule 56 and the local rules suffices, *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992).

likewise reveal he continuously received the prescribed postsurgery pain medications. Although Woodall did erroneously continue Brown's zantac prescription, Brown offers no evidence suggesting that Woodall intentionally ignored the specialist's order to the contrary. Brown's evidence supporting his third allegation falls short for a different reason: it does not implicate Woodall. Brown points generally to his requests for doctors going unanswered. But in testimony that is not disputed, Woodall says he did not see Brown's sick call requests or refuse to treat him.

The magistrate judge also correctly rejected Brown's claims based on doctors not being on site around-the-clock. Brown cites no authority, and we have found none, requiring that as a general matter. What is more, Brown's evidence shows doctors are on site throughout the day and available by phone at all other times when nurses are always present. *See Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982) (en banc) (noting the Eighth Amendment requires that prison medical staff be "able to treat medical problems or to refer prisoners to others who can"). In any event, Brown offers no proof that he suffered any injury as a result of doctors not being present at night.

III.

Given our agreement that it was proper to dismiss some allegations for failure to state a claim and others at the summary judgment stage for lack of evidentiary support, we confront the strike question posed at the outset.

Section 1915(g) reads as follows:

In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).  The statute speaks of "actions," not "claims," that were dismissed as frivolous, malicious, or for failure to state a claim.  The ordinary meaning of "action" is the entire lawsuit.  *See* FED. R. CIV. P. 2 (noting that "[t]here is one form of action—the civil action"); FED. R. CIV. P. 3 (stating that a civil "action" begins with the filing of a complaint); FED. R. CIV. P. 54(b) (recognizing that an "action" may contain "more than one claim" so that "any order . . . that adjudicates fewer than all the claims . . . does not end the action"); *see also Action*, BLACK'S LAW DICTIONARY (10th ed. 2014) (defining "action" as a "civil or criminal judicial proceeding" and noting that "[t]he terms 'action' and 'suit' are nearly if not quite synonymous" with the distinction being that action historically refers to proceedings in courts of law and suit to those in courts of equity).

That the PLRA uses "action" in its ordinary sense finds support in how the term is used elsewhere in section 1915.  Section 1915(e)(2) says the court "shall dismiss the case" notwithstanding partial payment if the "action or appeal" is frivolous or malicious.  28 U.S.C. § 1915(e)(2).  Likewise, Section 1915(f)(1) lists "action" in tandem with "suit" when discussing judgment for costs.  *Id.* § 1915(f)(1) ("Judgment may be rendered for costs at the conclusion of the suit or action . . . .").

Consistent with this reading, many other circuits have held that a strike issues only when the entire case is dismissed for being frivolous, malicious, or failing to state a claim.  *See Thompson v. Drug Enforcement Admin.*, 492 F.3d 428, 432 (D.C. Cir. 2007) ("Section 1915(g) speaks of the dismissal of 'actions and appeals,' not 'claims.'"); *Turley v. Gaetz*, 625 F.3d 1005, 1008–09 (7th Cir. 2010) ("[W]e believe that the obvious reading of the statute is that a strike is incurred for an action dismissed in its entirety on one or more of the three enumerated grounds."); *Tolbert v. Stevenson,* 635 F.3d 646, 651–52 (4th Cir.

2011) ("[W]e conclude that 'action' in § 1915(g) unambiguously means an entire case or suit.  Therefore, § 1915(g) requires that a prisoner's entire 'action or appeal' be dismissed on enumerated grounds in order to count as a strike."); *Thomas v. Parker*, 672 F.3d 1182, 1183 (10th Cir. 2012) (same); *Ellis v. Simmons*, 654 F. App'x 250, 251 (8th Cir. 2016) (same); *see also Pointer v. Wilkinson*, 502 F.3d 369, 375–76 (6th Cir. 2007) (implicitly recognizing the same).

These courts' reading of section 1915(g) comports with the PLRA's effort "to filter out the bad claims filed by prisoners and facilitate consideration of the good."  *Coleman v. Tollefson*, 135 S. Ct. 1759, 1762 (2015).  Allowing the Rule 12(b)(6) dismissal of a single claim out of many—a common occurrence even for cases with sophisticated plaintiff's counsel in this day of *Twombly* and *Iqbal*—to count as a strike would mean a prisoner gets a strike even when some of the claims succeed.  *Thompson*, 492 F.3d at 432 ("[I]t would make no sense to say—where one claim within an action is dismissed for failing to state a claim and another succeeds on the merits—that the 'action' has been dismissed for failing to state a claim.").  Imposing a strike only when the action itself is dismissed for one or more of the qualifying reasons is consistent with the statute's balance between deterring frivolous filings while maintaining access to the courts for facially valid claims.

*Patton v. Jefferson Correctional Ctr.*, 136 F.3d 458 (5th Cir. 1998), poses no obstacle to reading section 1915(g) as its language dictates.  Patton was denied *in forma pauperis* status for having three strikes.  *Id.* at 461.  Two of those strikes were for actions involving a section 1983 claim that was dismissed as frivolous and a habeas claim that was dismissed for failure to exhaust.  *Id.* at 462–63.  In holding that dismissal of those actions counted as strikes, we explained that when a single complaint includes both habeas claims

and civil rights claims, the district court should separate the claims and decide the section 1983 claims. *Id.* at 464. In that sense, two separate actions were at issue. Indeed, the three strikes provision does not apply to habeas actions as they "are considered something different from traditional civil actions." *Carson v. Johnson*, 112 F.3d 818, 820 (5th Cir. 1997). Because the civil rights portion of a complaint raising both habeas and section 1983 claims is the only "civil action" to which section 1915(g) applies, it makes sense to impose a strike when all the section 1983 claims in such an action are dismissed for frivolousness. We further noted that such a rule was necessary to prevent an end run around the PLRA as "litigious prisoners could immunize frivolous lawsuits from the 'three strikes' barrier by a simple expedient of pleading unexhausted habeas claims as components of § 1983 suits." *Patton*, 136 F.3d at 464.[2]

That same potential for abuse does not exist in a case like this one in which some of the claims got past the pleading stage yet failed, as many lawsuits of all types do, at summary judgment.[3] Because this "action" was not

---

[2] Some unpublished opinions cite *Patton* to impose strikes when some claims were dismissed on section 1915(g) grounds and other civil rights claims were dismissed for failing to exhaust administrative prison procedures. *See Taylor v. Swift*, 618 F. App'x 228, 228–29 (5th Cir. 2015); *Espinal v. Bemis*, 464 F. App'x 250, 252 (5th Cir. 2012); *Sears v. Blanco*, 442 F. App'x 961, 963 (5th Cir. 2011). Aside from being nonbinding, those cases are no barrier to the general rule we recognize today. Even circuits that rely on an "end run around" rationale to allow strikes for dismissals partly on section 1915(g) grounds and partly for failure to exhaust civil rights claims acknowledge that strikes generally do not issue for partial dismissals. *See Thomas v. Parker*, 672 F.3d 1182, 1183–84 (10th Cir. 2012) (holding that partial dismissals are not grounds for a strike but treating "end run around" cases as exceptions to that rule); *Pointer v. Wilkinson*, 502 F.3d 369, 375–76 (6th Cir. 2007) (same); *but see Turley v. Gaetz*, 625 F.3d 1005, 1008–09 (7th Cir. 2010) (holding that "dismissal of an action, in part for failure to exhaust and in part as frivolous, malicious or for failure to state a claim does not constitute a strike under § 1915(g)").

[3] We recognize that two unpublished opinions have imposed strikes in the situation we face. *See Foreman v. Potter*, 382 F. App'x 370 (5th Cir. 2010); *Walzier v. McMullen*, 333 F. App'x 848 (5th Cir. 2009). But neither case provides any analysis to support that decision

No. 15-60706

"dismissed on the grounds that it is frivolous, malicious, or fails to state a claim," a strike should not have been imposed.

\* \* \*

We AFFIRM the judgment of the district court but VACATE the strike.

---

or grapples with the meaning of "action" that leads us to join all the other circuits that have considered this question.