**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 20-2719 & 21-2810
_____

ALLEN DUPREE GARRETT
Appellant

v.

PHIL MURPHY,
Governor of the State of New Jersey;
REBECCA FRANCESCHINI,
Captain of Camden County Correctional Facility

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 1-20-cv-05235)
District Judge: Hon. Noel L. Hillman

_____

Submitted: September 22, 2021

Before: JORDAN, PORTER, and RENDELL,
*Circuit Judges*.

(Filed: October 29, 2021)

————————

Allen Dupree Garrett
Camden County Correctional Facility
330 Federal Street
Camden, NJ 08101

*Pro Se Appellant*

Grace Harter
Courtney Hinkle
Eva Schlitz
Georgetown University Law Center
Appellate Courts Immersion Clinic
600 New Jersey Avenue, N.W., Suite 312
Washington D.C., 20001

Madeline Meth
Brian S. Wolfman
Hannah Mullen
Georgetown University Law Center
Appellate Courts Immersion Clinic
600 New Jersey Avenue, N.W., Suite 312
Washington D.C., 20001

*Court-Appointed Amicus Curiae*

Andrew J. Bruck
Tasha M. Bradt
Deborah A. Hay
Agnes I. Rymer
Matthew J. Lynch
Office of Attorney General of New Jersey

Division of Criminal Justice
25 Market Street
Richard J. Hughes Justice Complex
Trenton, NJ 08625

*Counsel for Appellees*

_____

OPINION OF THE COURT
_____

PORTER, *Circuit Judge*.

Allen Dupree Garrett is a prisoner at the Camden County Correctional Facility. He has commenced numerous civil actions against prison officials, state officials, and the United States. Garrett has so far avoided paying filing fees for these lawsuits by proceeding in forma pauperis. All his lawsuits have been unsuccessful. Garrett appeals the dismissal of his latest lawsuit to this Court, asking once more to proceed in forma pauperis. Because Garrett has filed many fruitless lawsuits, this Court queried whether he should be allowed to avoid prepaying filing fees under the three-strikes rule. 28 U.S.C. § 1915(g). Garrett's eligibility to avoid prepaying fees turns in part on whether suits barred by *Heck v. Humphrey* are properly dismissed for failure to state a claim. 512 U.S. 477 (1994). Because this is an important question of law that has divided the circuits, we appointed the Georgetown Law Appellate Courts Immersion Clinic as amicus to address this and other issues relevant to Garrett's application. Amicus has ably discharged its responsibilities, but we nevertheless conclude that Garrett

3

has struck out. A suit dismissed under *Heck* is dismissed for failure to state a claim and counts as a strike. We will deny Garrett's motion to proceed in forma pauperis. To press his appeal, Garrett must first pay the filing fee.

I

Garrett is a New Jersey state prisoner and frequent litigant. Since his federal conviction in 2012, Garrett has brought at least ten civil suits in federal court.

In his latest suit, Garrett sued the Governor of New Jersey and another state official under 42 U.S.C. § 1983. App. 25–26. Garrett's complaint asserts two claims. First, that New Jersey state officials are keeping him in pretrial detention with deliberate indifference to his imminent risk of contracting COVID-19 and suffering severe physical injury, in violation of his substantive due process rights. Second, that he has been kept in prison for too long without a trial, in violation of his right to a "speedy trial." Garrett requests immediate release and $100 million in damages.

At Garrett's request, the District Court granted Garrett in forma pauperis status. Under the Prison Litigation Reform Act ("PLRA"), before serving the complaint, the District Court had to screen and dismiss Garrett's complaint sua sponte if it is frivolous or malicious, fails to state a claim, or seeks monetary relief from an immune defendant. 28 U.S.C. § 1915(e)(2)(B)(i)–(iii). In performing this preliminary screening duty, the District Court first addressed Garrett's due process claim and concluded that his complaint "is a string of non-sequiturs and case citations, and there are no facts to support any claim . . . for due process violations." App. 8. The District Court dismissed Garrett's due process claim "without

4

prejudice" and with leave to amend "within 45 days" of the order. App. 12. The District Court also dismissed Garrett's speedy trial claim but did so "with prejudice," because the claim was properly raised only "in a habeas corpus action." App. 11–12.

Nearly one hundred days later, Garrett appealed the District Court's order. But it is well settled that "a dismissal without prejudice and with leave to amend isn't a final order." *Weber v. McGrogan*, 939 F.3d 232, 237 (3d Cir. 2019). We therefore advised Garrett that we likely lacked jurisdiction over his appeal. Garrett then elected to stand on his complaint and sought a final judgment from the District Court to perfect his right to appeal. App. 19. The District Court obliged, dismissing Garrett's complaint "with prejudice" in a final judgment order. App. 18–21. But Garrett never filed a new or amended notice of appeal in the District Court, and a notice of appeal must be filed within thirty days "*after* the entry" of judgment, not before entry of judgment. 28 U.S.C. § 2107(a) (emphasis added); *Marshall v. Comm'r Pa. Dep't of Corr.*, 840 F.3d 92, 97 (3d Cir. 2016). This filing requirement is jurisdictional. *Selkridge v. United of Omaha Life Ins. Co.*, 360 F.3d 155, 161 (3d Cir. 2004).

II

We must first confirm our jurisdiction to hear this appeal. The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1343. We have jurisdiction over timely appeals from the District Court's "final" orders. 28 U.S.C. § 1291. But Garrett appealed too early, and he appealed from the District Court's initial non-final dismissal order, not the final order dismissing his action.

5

Garrett, however, has filed what we construe to be a second notice of appeal in this Court. The document, labeled "2nd Notice," cites the docket number for the District Court proceeding, names the parties, and asserts Garrett's "right" to bring suit before this Court after a final judgment. ECF No. 20. That is enough to constitute a notice of appeal under Rule 3(c) and the liberal standards we apply to pro se litigants. Fed. R. App. P. 3(c)(4). While Garrett mistakenly filed the second notice of appeal in our Court, that is not fatal. Under Rule 4(d), when a notice of appeal is "mistakenly filed in the court of appeals, the clerk of that court must note on the notice the date when it was received and send it to the district clerk. The notice is then considered filed in the district court on the date so noted." Fed. R. App. P. 4(d). Garrett's second notice was received by this Court on October 5, 2020, less than thirty days after the District Court's judgment order, so it is timely. We have transmitted Garrett's second notice of appeal to the District Court, and we have consolidated the appeals.

We have jurisdiction over Garrett's second notice of appeal, so we will proceed to consider Garrett's application for in forma pauperis status.[1]

### III

By the mid-1990s, Congress was concerned about the "sharp rise in prisoner litigation in the federal courts." *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). To address that concern, Congress enacted reforms to "filter out the bad claims filed by prisoners and facilitate consideration of the good." *Coleman v. Tollefson*, 575 U.S. 532, 535 (2015) (brackets and citation omitted). One of those reforms was the PLRA's three-strikes

---

[1] We will dismiss Garrett's premature appeal as moot.

rule. 28 U.S.C. § 1915(g). That rule prevents a prisoner[2] from suing in forma pauperis—that is, without first paying the filing fee—if three or more civil actions or appeals filed by the prisoner have previously been "dismissed on the grounds that [they were] frivolous, malicious, or fail[ed] to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). After Garrett sought to proceed in forma pauperis, we invoked the three-strikes rule. Garrett denied that he had struck out and claimed to be under imminent danger of serious physical harm.

We now proceed to count Garrett's strikes, stopping if we count to three. If Garrett has three strikes, we will consider whether he is in imminent danger of serious physical injury. If he is not, we will deny his application for in forma pauperis status, and we will defer consideration of the merits until he pays the filing fee.

A

We first address whether Garrett's three dismissals under *Heck v. Humphrey* count as strikes for "failure to state a claim" under 28 U.S.C. § 1915(g). In *Heck*, the Supreme Court held that a prisoner lacks a "cause of action" under § 1983 if the prisoner is challenging an "allegedly unconstitutional conviction or imprisonment" before having the conviction or sentence overturned. 512 U.S. at 486–87, 489. Analogizing the claim to a "common-law cause of action for malicious prosecution," the Supreme Court noted that "[o]ne *element* that must be alleged and proved in a malicious prosecution action is

---

[2] "Prisoner" includes pretrial detainees like Garrett. 28 U.S.C. § 1915(h).

7

termination of the prior criminal proceeding in favor of the accused." *Id.* at 484 (emphasis added) (citing W. Keeton et al., *Prosser and Keeton on Law of Torts* 874 (5th ed. 1984)). To prevent improper collateral attacks on convictions or sentences through money damages actions, the Supreme Court applied an analogous favorable-termination requirement to § 1983 actions. *Id.* at 484–87. The Court held that:

> [W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Id.* at 487. More precisely, the plaintiff seeking damages "must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486–87. *Heck*'s favorable-termination requirement applies to *Bivens* actions as well. *Lora-Pena v. FBI*, 529 F.3d 503, 505 n.2 (3d Cir. 2008).

Garrett has three prior suits dismissed for failure to meet *Heck*'s "favorable-termination" requirement.

First, in *Garrett v. Mendez*, No. 13-cv-5343 (D.N.J. Aug. 14, 2014), Garrett brought a § 1983 action challenging his prosecution, arrest, and conviction after he pleaded guilty to violating 18 U.S.C. § 922(g)(1). The district court held that Garrett's action for money damages was barred under *Heck*

8

because his conviction had been upheld on appeal and collateral review. *See United States v. Garrett*, 507 F. App'x 139 (3d Cir. 2012). The court then concluded that "[Garrett]'s claims are barred" and dismissed the complaint "for failing to state a claim upon which relief may be granted." Add. 5aa.

Second, in *Garrett v. United States District Court for the District of New Jersey*, No. 17-cv-2924 (D.N.J. July 14, 2017), Garrett brought § 1983 and *Bivens* claims against his former defense attorneys and his sentencing judge, seeking money damages and immediate release. The district court determined that all the defendants named by Garrett were immune from suit under § 1983 and *Bivens*. The court in the alternative also held that Garrett sought immediate release and damages relief arising from his sentence even though it was "clear" that his conviction had not been invalidated. The court thus dismissed Garrett's claims on the ground that Garrett had pleaded no facts supporting a claim that the sentence had been invalidated or called into question.

Third, in *Garrett v. United States*, No. 18-cv-14515 (D.N.J. Nov. 27, 2018), *aff'd*, 771 F. App'x 139 (3d Cir. 2019), Garrett brought § 1983 and *Bivens* claims, this time against the United States. The district court expressed confusion about what Garrett was claiming but presumed "he [was] making some sort of wrongful conviction and imprisonment allegation." Add. 24aa. The court held that Garrett's claims were barred by *Heck* because his conviction had been upheld on appeal and collateral review and had not been invalidated. The court dismissed Garrett's complaint without prejudice, permitting Garrett to file a new complaint in the event his conviction is vacated.

9

Amicus argues that none of these dismissals are strikes. Amicus first argues that a dismissal under *Heck* is not on the strike-counting ground of "failure to state a claim."[3] Amicus next argues in the alternative that even if *Heck* dismissals are strikes for failure to state a claim, the dismissals here are "mixed" dismissals that cannot count as strikes under the PLRA. Amicus finally argues that one of these three dismissals does not count as a strike because the ground for dismissal is unclear from the dismissal order. We will address each argument in turn.

1

Every year, pro se prisoners file over one thousand civil-rights suits in this circuit. *Integrated Database (IDB)*, Fed. Jud. Ctr., https://perma.cc/2WMB-3MHX (last visited Oct. 7, 2021). Many of these suits are barred by *Heck*'s favorable-termination requirement, but courts must nevertheless use their limited time to read the pleadings and dismiss them, delaying justice in other cases. And yet, until now, we have never addressed in a precedential opinion whether a dismissal under *Heck* counts as a PLRA strike for failure to state a claim.[4]

Several other circuits have addressed this issue. The Fifth, Tenth, and D.C. Circuits have held that dismissals for

---

[3] We exercise our independent judgment to analyze the grounds for dismissal, but we do not sit as a court of appeals to say what the district court *should* have done on the merits. *Fourstar v. Garden City Grp., Inc.*, 875 F.3d 1147, 1152–53 & n.2 (D.C. Cir. 2017) (Kavanaugh, J.).

[4] In an unpublished opinion, we have stated that *Heck* dismissals are for failure to state a claim. *See Ortiz v. N.J. State Police*, 747 F. App'x 73, 77, 79 (3d Cir. 2018).

failure to meet *Heck*'s favorable-termination requirement count as dismissals for failure to state a claim. *Colvin v. Le-Blanc*, 2 F.4th 494, 499 (5th Cir. 2021); *Smith v. Veterans Admin.*, 636 F.3d 1306, 1311–12 (10th Cir. 2011); *In re Jones*, 652 F.3d 36, 38 (D.C. Cir. 2011). The Seventh and Ninth Circuits, however, have characterized *Heck*'s favorable-termination requirement as an affirmative defense subject to "waiver," analogous to an exhaustion requirement. *Polzin v. Gage*, 636 F.3d 834, 838 (7th Cir. 2011); *Washington v. L.A. Cnty. Sheriff's Dep't*, 833 F.3d 1048, 1056 (9th Cir. 2016). The First and Eleventh Circuits have described *Heck*'s favorable-termination requirement as both "jurisdictional" and as an "element" of a claim for damages arising from a conviction or sentence under § 1983. *Compare O'Brien v. Town of Bellingham,* 943 F.3d 514, 529 (1st Cir. 2019), *with Figueroa v. Rivera*, 147 F.3d 77, 81 (1st Cir. 1998); *see also Harrigan v. Metro Dade Police Dep't Station #4*, 977 F.3d 1185, 1191 n.4 (11th Cir. 2020). For our part, we recently held that *Heck*'s favorable-termination requirement "does not implicate a federal court's jurisdiction." *Vuyanich v. Smithton Borough*, 5 F.4th 379, 389 (3d Cir. 2021).

We now join the Fifth, Tenth, and D.C. Circuits in holding that the dismissal of an action for failure to meet *Heck*'s favorable-termination requirement counts as a PLRA strike for failure to state a claim. We do so for a simple reason: Any other rule is incompatible with *Heck*.

*Heck* is clear. Suits dismissed for failure to meet *Heck*'s favorable-termination requirement are dismissed because the plaintiff lacks a valid "cause of action" under § 1983, and a cause of action in this context is synonymous with a "claim" under the PLRA. 512 U.S. at 489; *Black's Law Dictionary* 240 (7th ed. 1999). This is consistent with the Supreme Court's

11

consistent interpretation of *Heck*'s favorable-termination requirement as necessary to bring "a complete and present cause of action" under § 1983. *McDonough v. Smith*, 139 S. Ct. 2149, 2158 (2019) (citation omitted).

It is also consistent with the tort of malicious prosecution *Heck* relied on. Favorable termination is (and always has been) a necessary element of a malicious prosecution claim. In 1871, when § 1983 was enacted, favorable termination was a necessary element of a malicious prosecution action. Thomas M. Cooley, *A Treatise on the Law of Torts* 186 (Chi., Callaghan & Co. ed., 1880). As the Supreme Court put it, "[t]o support an action for a malicious criminal prosecution the plaintiff must prove" that the "prosecution . . . finally terminated in his acquittal." *Wheeler v. Nesbitt*, 65 U.S. (24 How.) 544, 549 (1860). To this day, favorable termination remains an element of malicious prosecution claims. "To prove malicious prosecution under § 1983," we have held, "a plaintiff must show that . . . the criminal proceeding ended in plaintiff's favor." *Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009) (en banc) (brackets omitted). Without favorable termination, a plaintiff lacks a claim, and the complaint must be dismissed as premature for failure to state a claim. *See, e.g.*, *Lanning v. City of Glens Falls*, 908 F.3d 19, 29 (2d Cir. 2018); *Nataros v. Superior Ct. of Maricopa Cnty.*, 557 P.2d 1055, 1057 (Ariz. 1976). Dismissals for failure to meet *Heck*'s favorable-termination element therefore count as PLRA strikes for failure to state a claim.

Amicus presents two alternative arguments for why *Heck* dismissals should not count as PLRA dismissals for failure to state a claim. We are unpersuaded.

Amicus first argues that "*Heck* dismissals implicate whether or not the court has the authority to entertain the

12

action." Amicus Br. 18. Accordingly, amicus argues that courts must sua sponte dismiss *Heck*-barred claims for lack of subject-matter jurisdiction at any state of the litigation, and not for failure to state a claim. *Id.* at 17–21.

We reject this first argument because it is contrary to our holding that *Heck*'s favorable-termination requirement "does not implicate a federal court's jurisdiction." *Vuyanich*, 5 F.4th at 389. Amicus appears to suggest that *Vuyanich* is irrelevant because it "did not involve PLRA strike counting, and the panel did not consider how *Heck* functions." Amicus Reply Br. 6. But that *Vuyanich* did not involve strike-counting does not mean it is non-precedential. *Vuyanich* is a binding interpretation of *Heck* in any application. So we will follow our precedent as set forth in *Vuyanich*. 3d Cir. I.O.P. 9.1

We would, in any event, reject amicus's "jurisdictional" approach on the merits because it is unpersuasive. "It is firmly established . . . that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998). A suit barred by *Heck*'s favorable-termination requirement fails to state a valid cause of action under § 1983, so it falls under this "firmly established" rule and is not jurisdictional. *Id.* We see no basis for converting *Heck*'s favorable-termination rule into a "jurisdictional" rule. As the Supreme Court has warned, "[j]urisdiction . . . is a word of many, too many, meanings." *Id.* at 90 (citation omitted). "The word 'jurisdictional' is generally reserved for prescriptions delineating the classes of cases a court may entertain (subject-matter jurisdiction) and the persons over whom the court may exercise adjudicatory authority (personal jurisdiction)." *Fort Bend County v. Davis*, 139 S. Ct. 1843, 1848 (2019). *Heck*'s favorable-termination requirement is an implied element of a claim, not a

13

rule of subject-matter or personal jurisdiction, so we decline to treat *Heck*'s favorable-termination requirement as somehow "jurisdictional."

Amicus argues in the alternative that *Heck*'s favorable-termination requirement is an affirmative defense that may be waived by the defendant, not an element of a claim. The Ninth Circuit has adopted this view, reasoning that "compliance with *Heck* most closely resembles the mandatory administrative exhaustion of PLRA claims, which constitutes an affirmative defense and not a pleading requirement." *Washington*, 833 F.3d at 1056. In *Vuyanich*, we cited the Ninth Circuit's affirmative-defense "approach" with approval, but we had no occasion to decide whether *Heck* was an element of a claim for relief or an affirmative defense. We held only that *Heck* was not "jurisdictional." *Vuyanich*, 5 F.4th at 389.

We now reject this alternative affirmative-defense understanding of *Heck*. The Court in *Heck* took pains to make clear that it was not adding an exhaustion requirement to § 1983: "We do not engraft an exhaustion requirement upon § 1983, but rather deny the existence of a cause of action." *Heck*, 512 U.S. at 489. Nothing in *Heck* requires that *the defendant* first plead the validity of the conviction in an answer. Rather, *Heck* is clear that the favorable-termination requirement is a necessary element of the claim for relief under § 1983, not an exhaustion defense that must be anticipated by the defendant's answer. *Id.* at 483–87.

We are unpersuaded by the Ninth Circuit's contrary reasoning. The Ninth Circuit defended its approach by noting that § 1983's text does not say anything about a favorable-termination requirement. *Washington*, 833 F.3d at 1056. But that is a substantive disagreement with *Heck*'s gloss on § 1983, not

14

about what *Heck* itself said. We have neither the power nor the inclination to second-guess the Supreme Court's reading of § 1983. Nor do we find the Ninth Circuit's analogy to PLRA-exhaustion persuasive. The more apt analogy is the one *Heck* itself makes: a malicious-prosecution claim, which requires alleging and showing favorable termination to state a claim for relief. 512 U.S. at 477, 483–84; *see also Nataros*, 557 P.2d at 1057.

Amicus adds that because *Heck* dismissals are usually "without prejudice" to refiling if the favorable-termination requirement is later met, *Heck* dismissals are necessarily not on the merits and cannot relate "to a pleading deficiency." Amicus Reply Br. at 7. That is wrong. It is well settled that suits may be dismissed without prejudice *and* for failure to state a claim when the prematurity of suit "appears on the face of the pleadings" because one of the elements has not yet been met. Restatement (Second) of Judgments § 20(2) cmt. k (1982). For example, when a malicious-prosecution "action is filed prior to favorable termination of the proceedings, the action is premature and subject to dismissal." *Nataros*, 557 P.2d at 1057. Dismissal is nonetheless for failure "to state a claim upon which relief can be granted." *Id.*[5]

---

[5] Some courts routinely dismiss *Heck*-barred suits as frivolous. *See, e.g., Davis v. Kansas Dep't of Corr.*, 507 F.3d 1246, 1249 (10th Cir. 2007); *Kastner v. Texas*, 332 F. App'x 980, 981 (5th Cir. 2009) (per curiam). But none of Garrett's suits were explicitly dismissed as frivolous, so we do not decide whether *Heck*-barred claims are frivolous.

Amicus next argues that none of the three suits dismissed under *Heck* count as strikes because they involved "mixed" dismissals. We disagree.

We recently held in *Talley v. Wetzel* that "mixed dismissals are not strikes." 15 F.4th 275 (3d Cir. 2021). A "mixed" dismissal happens when some claims in the civil action are dismissed on strike-counting grounds but others are not. For example, in *Talley*, the federal claims were dismissed for failure to state a claim, but the pendent state-law claims were dismissed, we said, based on the district courts' discretionary decisions to not exercise supplemental jurisdiction over the state-law claims. In such cases, because the entire civil action is not dismissed on strike-counting grounds, the dismissal of the action does not count as a PLRA strike.

The dismissals here do not involve supplemental state-law claims as in *Talley*. Instead, amicus argues that the actions here are "mixed" because they "included claims that belonged in a habeas petition, which were not dismissed for failure to state a claim." Amicus Reply Br. 13. That is incorrect. Garrett's suits involved only civil-rights claims for injunctive relief or money damages barred by Supreme Court precedent, not habeas claims. But even if we construe Garrett's claims for injunctive relief as habeas claims, the dismissal of habeas claims does not make the dismissals "mixed," because habeas claims are not part of a civil action for PLRA purposes.

In *Preiser v. Rodriguez*, the Supreme Court held that "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier

release from that imprisonment, his sole federal remedy is a writ of habeas corpus." 411 U.S. 475, 500 (1973). Allowing § 1983 suits for *injunctive relief* available in habeas, the Supreme Court reasoned, would nullify the exhaustion requirements of federal habeas, and allow direct collateral attacks in federal court. *Id.* at 477, 489–90. Just as in *Heck*, whenever a plaintiff pleads a violation of § 1983 and effectively seeks habeas relief, the plaintiff fails to state a § 1983 claim. Instead, the prisoner's only federal remedy is through a writ of habeas corpus after exhausting state remedies.

While two of Garrett's dismissals involved claims for injunctive relief, none of the suits included actual habeas claims.

Garrett's first *Heck* dismissal sought only money damages and an "apology" from the defendants, not immediate or speedier-release relief sounding in habeas. The district court noted in passing that "to the extent Plaintiff seeks to challenge the propriety of his stop, arrest, prosecution and conviction, he is attempting to bring a second or successive motion for habeas relief, which is barred except in certain narrow circumstances not present here." Add. 5aa. But that hypothetical speculation is not enough for us to conclude that the district court dismissed any claims for injunctive relief, let alone actual habeas claims.

In Garrett's second *Heck* dismissal, the district court expressly refused to construe Garrett's claim seeking immediate release as a habeas action, because Garrett already had two separate pending actions for habeas relief. As a strike-counting court, we will not second-guess that refusal.

Garrett's third *Heck* dismissal also includes a claim for immediate release. But the court noted that Garrett had sought

17

to stay the civil-rights action until his separate pending habeas action was adjudicated, showing that Garrett understood he was not bringing habeas claims.

That does not end the matter. The Ninth Circuit has held that in § 1983 suits barred by both *Heck* and *Preiser*, a *Preiser*-barred claim for injunctive relief "sounds only in habeas." *Washington*, 833 F.3d at 1057. And since habeas proceedings are not "civil actions" under the PLRA, an action that dismisses injunctive-relief claims sounding in habeas is, according to the Ninth Circuit, never a dismissal of the entire action on strike-counting grounds. *Id.* If we applied the Ninth Circuit's approach here, Garrett's *Preiser* dismissals in the second and third actions would insulate his otherwise strike-worthy *Heck* dismissals from counting as PLRA strikes.

The Fifth Circuit, however, has reached the opposite conclusion. In the Fifth Circuit, "when a single complaint includes both habeas claims and civil rights claims, the district court should separate the claims and decide the section 1983 claims." *Brown v. Megg*, 857 F.3d 287, 291 (5th Cir. 2017). The claims are really "two separate actions." *Id.* And while § 1915(g) does not apply to the habeas action, it does apply to the § 1983 action. *Id.* "Because the civil rights portion of a complaint raising both habeas and section 1983 claims is the only 'civil action' to which section 1915(g) applies, it makes sense to impose a strike when all the section 1983 claims in such an action are dismissed for frivolousness." *Id.* (quoting 28 U.S.C. § 1915(g)). Because they are not the same "civil action" for the PLRA's strike-counting purposes, the dismissal of *Preiser*-barred claims does not make a dismissal "mixed." *Id.*

We agree with the premise shared by both circuits: habeas proceedings are not "civil actions" under the PLRA's

18

three-strikes provision. This conclusion is required by precedent. In *Santana v. United States*, we held that "civil action" as used in a neighboring PLRA provision—§ 1915(*b*), requiring prisoners to pay court-filing fees and allowing payment in installments—does not include habeas proceedings. 98 F.3d 752, 754, 756 (3d Cir. 1996). We reasoned in part that "[t]o hold that the PLRA was applicable to habeas corpus actions would prohibit a prisoner who had filed three groundless civil suits from seeking habeas relief from unlawful imprisonment. . . . This is a result that we cannot countenance." *Id.* at 756.

*Santana* compels us to conclude that the three-strikes provision does not include habeas claims. Generally, "a statutory phrase must have a fixed meaning across a statute." *Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721, 1725 (2020). Applying *Santana* and the fixed-meaning canon, we now conclude that § 1915(g), the three-strikes provision, does not apply to habeas proceedings because they are not PLRA civil actions.[6]

While habeas proceedings are not civil actions under the PLRA, we reject the Ninth Circuit's conclusion that dismissals under both *Heck* and *Preiser* are therefore "mixed" dismissals that do not count as strikes. The Ninth Circuit's rule would have us say that *Preiser*-barred claims are not part of a PLRA

---

[6] *Santana'*s holding applies to habeas petitions filed under either 28 U.S.C. § 2254, for prisoners under state custody, *or* under § 2255, for prisoners (like Garrett) under federal custody. *Santana v. United States*, 98 F.3d 752, 754, 756 (3d Cir. 1996). The case for holding that § 2255 proceedings are not PLRA "civil actions" is even stronger because unlike § 2254 proceedings, § 2255 proceedings are a "continuation of a defendant's federal criminal case." *United States v. Thomas*, 713 F.3d 165, 169 (3d Cir. 2013).

"civil action," only to turn around and assume they *are* part of the "civil action" for purposes of determining whether a dismissal is "mixed" and does not count as a PLRA strike. We decline to adopt that inconsistent approach to characterizing the scope of a PLRA "civil action." We instead hold, consistent with the Fifth Circuit, that because habeas claims are not part of a civil action under the PLRA, they are also not part of the civil action when deciding whether a dismissal was mixed under the PLRA.

Applying that rule to Garrett's dismissals, we conclude that even if Garrett's *Preiser*-barred claims are *necessarily* habeas claims, that legal fiction would not help Garrett. Habeas claims are not part of a PLRA civil action, so the dismissal of habeas claims, real or imagined, never makes a *Heck* dismissal "mixed." We therefore reject amicus's argument that Garrett's dismissals are "mixed" dismissals that do not count as strikes under *Talley*.

3

Amicus finally argues that Garrett's second *Heck* dismissal does not count as a strike because the ground for dismissal was unclear. Amicus asserts that to count as a strike, the order (instead of the accompanying opinion) must "explicitly" state that action was dismissed on a strike-counting ground. New Jersey concedes that the second *Heck* dismissal does not count as a strike, but it does so because in its view neither the order nor the accompanying opinion explicitly say that the dismissal was on strike-counting grounds.

Amicus and New Jersey rely on our opinion in *Byrd v. Shannon*. 715 F.3d 117, 126 (3d Cir. 2013). There, we adopted the following rule:

20

> [A] strike under § 1915(g) will accrue only if the entire action or appeal is (1) dismissed explicitly because it is "frivolous," "malicious," or "fails to state a claim" or (2) dismissed pursuant to a statutory provision or rule that is limited solely to dismissals for such reasons, including (but not necessarily limited to) 28 U.S.C. §§ 1915A(b)(1), 1915(e)(2)(B)(i), 1915(e)(2)(B)(ii), or Rule 12(b)(6) of the Federal Rules of Civil Procedure.

*Id*. at 126. We see nothing in *Byrd* or the PLRA that would support amicus's contention that the order itself must explicitly state strike-counting grounds for dismissal. In *Byrd*, we analyzed the text of the *opinion*, not the order, so *Byrd* disproves amicus's argument. *Id.* at 125 (citation omitted). And we decline to invent this rule because it would allow many clear strikes to go uncounted. Amicus urges us to look to opinions and not just orders to avoid counting an *improper* strike: "It is critical that courts not rely solely on the language of a dismissal order when issuing a strike because accompanying opinions routinely offer context missing from dismissal orders." Amicus Reply Br. 11. As amicus points out, "dismissing courts are not focused on strike counting when drafting dismissal orders." *Id.* at 12. Those weighty reasons suggest we should look at opinions and not just orders both to avoid false positives (counting an improper strike), as well as false negatives (not counting proper strikes). We reject amicus's argument that prisoners must get a free pass if strike-counting grounds are not explicitly stated in the order.

Examining the dismissal opinion, as we did in *Byrd*, we are compelled to disagree with both amicus and New Jersey. While the opinion does not include the magic words "dismissed for failure to state a claim," we do not read *Byrd* to

21

articulate such a demanding standard. Under *Byrd*, the dismissal counts as a strike if the entire action was "dismissed pursuant to a statutory provision or rule that is limited solely to dismissals for such reasons." *Byrd*, 715 F.3d at 126. Here, the court's opinion explicitly dismissed the claims pursuant to "1915(e)(2)(B)(ii)" and "Federal Rule of Civil Procedure 12(b)(6)," Add. 14aa, both of which are limited to dismissals for failure to state a claim, a strike-counting ground. We have no doubt the court applied that standard when dismissing the entire action on both facially apparent sovereign immunity grounds and as entirely blocked by *Preiser* and *Heck*. Thus, we easily conclude that this second dismissal counts as a strike.

Because we have counted to three, Garrett has struck out, and we need not keep counting.

B

We next consider whether Garrett has shown that he is "under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). He has not.

Garrett argues that COVID-19 is rampant in New Jersey jails, that New Jersey is not following proper guidelines, and that he faces a serious risk of death or injury if he gets sick with COVID-19 given his poor health. But Garrett has since filed medical records showing that he had COVID-19 in December of 2020. Garrett's risk of getting sick with COVID-19 is therefore no longer "imminent"—it has already occurred. Protected by natural immunity, Garrett has not shown that continued exposure to COVID-19 still puts him at imminent risk of serious

physical injury.[7] We also take judicial notice that, to the extent Garrett believes that he remains at serious risk of physical injury or death, effective COVID-19 vaccines are widely available, and Garrett has not shown he lacks proper access to the vaccine. *Cf. United States v. Burgard*, 857 F. App'x 254, 255 (7th Cir. 2021) ("widespread availability of the COVID-19 vaccine . . . eliminates" need for compassionate release).

Garrett has not met his burden of showing imminent threat of serious physical injury.

\* \* \*

Because we conclude that Garrett has struck out and has not shown an imminent risk of death or serious physical injury, we will deny his application for in forma pauperis status. We will defer consideration of the merits of Garrett's appeal until he pays his filing fee. Should Garrett pay the filling fee, we will retain jurisdiction to decide the merits of his appeal.

If Garrett fails to pay his filing fee within fourteen days of the docketing of this decision, we will direct the clerk to

---

[7] *See, e.g.*, Sivan Gazit et al., *Comparing SARS-CoV-2 Natural Immunity to Vaccine-Induced Immunity: Reinfections Versus Breakthrough Infections*, MEDRXIV (Aug. 25, 2021), https://perma.cc/D9VT-ZMMR (last visited Oct. 7, 2021); Alice Cho et al., *Anti-SARS-Cov-2 Receptor Binding Domain Antibody Evolution After Mrna Vaccination*, Nature (Oct. 7, 2021), https://perma.cc/KVP7-JEB4; Nabin K. Shrestha et al., *Necessity of COVID-19 Vaccination In Previously Infected Individuals*, MEDRXIV (June 5, 2021), https://perma.cc/MCG2-3N33 (last visited Oct. 7, 2021).

close his appeal without further notice. *See* Fed. R. App. P. 3(a)(2); 3rd Cir. L.A.R. 3.3(a), 107.1(a) (2011).